IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :     No. 4:06-CR-00225
                               :
          v.                     :     (Judge McClure)
                               :
RICHARD J. STUBLER,          :
                               :
       Defendant.            :

**O R D E R**

October 24, 2006

**BACKGROUND:**

On June 22, 2006, a Grand Jury sitting in the Middle District of

Pennsylvania charged defendant Richard J. Stubler with violating 18 U.S.C.

§ 115(a)(2).  Stubler had allegedly sunk a knife into the siding of a house owned by

a retired United States Probation Officer in September 2005.  On June 23, 2006,

Stubler entered a plea of not guilty to the indictment.

On July 28, 2006, the government filed an information containing four

additional counts.  The information contained one count of attempted damage to

government property in violation of 18 U.S.C. § 1361 and three counts of

disorderly conduct in violation of 41 C.F.R. § 102-74.390.  In the information, the

government alleged that Stubler had posted several disruptive signs on the front

window of the federal building in Williamsport, PA and had also attempted to

smash the same window with a sledgehammer.  On August 7, 2006, Stubler

entered a plea of not guilty to the four counts of the information.

Stubler waived his right to a jury trial and a non-jury trial was held on

September 1, 2006.  The trial was based upon a stipulated set of facts, testimony

from two government witnesses, and a number of exhibits.  On September 13,

2006, the court rendered its verdict, finding Stubler guilty on count one of the

indictment and acquitting him on all four counts of the information.

On September 19, 2006, Stubler filed a "Motion for Judgment of Acquittal

on Count One of the Indictment."  Opposing and reply briefs have been filed.

Now, for the following reasons, the court will deny Stubler's motion.


**STATEMENT OF FACTS:**

On January 25, 1994, Stubler entered a plea of guilty to the charge of

destroying government property, and was sentenced to four months of

imprisonment and three years of supervised release.  Mel Hoover is the probation

officer who supervised Stubler during his period of supervised release.  Although

the supervised release term ended in April, 1997, Stubler still occasionally visited

Mr. Hoover at the Federal Building in Williamsport, PA to discuss various topics.

Stubler suffers from paranoid schizophrenia and Hoover allowed these visits

because he had knowledge of Stubler's unstable mental condition.

Sometime in March of 2002, Stubler believes that he saw an apparition of Osama Bin Laden and this indicated to Stubler that Bin Laden was now dead. Certain that this was valuable information to the United States Government, Stubler told Hoover about the incident, assuming it would be forwarded to the FBI. Stubler believes that in June of 2005, in response to the Bin Laden apparition, the FBI instituted surveillance of Stubler that included placing a camera inside Stubler's television. This perceived invasion of his privacy caused Stubler much anger and displeasure.

On September 19, 2005, Stubler traveled to Hoover's residence with a knife. He walked up to the door with the knife and knocked. When no one responded, Stubler sunk the knife into the house and then left. The knife was discovered soon after by a member of Hoover's family. Following this incident, Hoover and his family feared for their security. Yet, it was not until much later that Hoover became suspected of the knife incident.

 On June 14, 2006, Stubler contacted the FBI and had a taped telephone conversation with an FBI agent. During this conversation,  he expressed his displeasure with the surveillance he believed was occurring.  He also discussed the reason he believed the surveillance had begun. He stated that he knew that Bin

3

Laden was dead and that he had so informed Hoover.  Furthermore, he believed that Hoover relayed this information to the FBI, and that this is what led to the surveillance.  He also stated that "the government was on me, I was feeling pressure, I was angry at Mel [Hoover], I figured Mel was the government."  The same day, Hoover received a letter from Stubler in which he expressed his displeasure with the FBI.  This letter specifically stated that "you started all this."

On June 15, 2006, Stubler visited the FBI in person.  During this meeting, Stubler's notebook revealed information that connected him to the knife incident at Hoover's residence.  This is what led to his indictment and arrest.

**DISCUSSION:**

Rule 29 of the Federal Rules of Criminal Procedure allow for a motion for judgment of acquittal.  The standard the court must apply is whether "the evidence is insufficient to sustain a conviction."  2A Charles Alan Wright, Federal Practice and Procedure § 467 (3d ed. 2000).  This standard remains the same despite the fact that this was a non-jury trial.  McCarthy v. New York City Technical College of City Univ. of New York, 202 F.3d 161, 166 (2d Cir. 2000).

18 U.S.C. § 115(a)(2) has two distinct elements.  First, it requires an assault or threat to assault a former federal official or member of such a person's

immediate family.  Id.  Second, it requires this assault or threatened assault to have been done with the intent to retaliate against the official for the performance of his or her official duties.  Id.

In the present case, Stubler does not dispute that a threat to assault occurred. Instead, he appears to argue that the requisite intent is lacking.  Specifically, Stubler makes three arguments with respect to the required intent.  First, he argues that there is no evidence that Stubler ever told Hoover about the surveillance prior to the knife incident, so it is not possible that the threat was in retaliation for his failure to stop the surveillance.  (Def.'s Br., Rec. Doc. No. 64, at 6.)  Second, he argues that even if the act was done in retaliation for his failure to stop the surveillance, this was not retaliation for his "official duties."  (Id. at 7.)  Finally, he argues that 28 U.S.C. § 115(a)(2) requires specific intent and that Stubler's decision to sink the knife into the siding of the house was a snap decision.  (Id. at 8.)

With respect to Stubler's first argument, the court does not find it relevant when or if Stubler ever told Hoover about the FBI surveillance.  All that matters is what was in Stubler's mind when he decided to place the knife in the siding of the house.  The facts make it clear that Stubler attributed the FBI surveillance to Hoover.  Stubler, in his taped telephone conversation with the FBI on June 14,

2006, specifically states with regards to the displeasure the surveillance was causing him that "the government was on me, I was feeling pressure, I was angry at Mel [Hoover], I figured Mel was the government."  Furthermore, in a June 14, 2006 letter complaining of the surveillance written to Hoover, Stubler states that "you started all this."  Although the conversation and letter occurred after the knife incident, they are relevant to the court's determination of Stubler's attitude towards Hoover.  Thus, there was sufficient evidence for this court to find, beyond a reasonable doubt, that Stubler traveled to Hoover's house with a knife, walked up to the front door with the knife up his sleeve, and then sunk the knife in the siding of the house, because he was angry with Hoover for either being involved in starting or failing to stop the surveillance.

Stubler's second argument is that even if the act was done in retaliation for his failure to stop the surveillance, this was not retaliation for performance of his "official duties."  It is true that when Stubler came to talk to Hoover about the Bin Laden sighting, Stubler was no longer on supervised release.  It is also true that Hoover's job description as a United States Probation Officer likely does not include informing the FBI about Stubler's Bin Laden sighting or convincing the FBI to stop surveillance.  Still, the court does not endorse such a narrow interpretation of "official duties."  Such an interpretation would lead to a

6

substantial decrease in the protection that the statute affords government officials.

The key distinction is whether the actions retaliated against were taken in a

personal capacity or official capacity.  United States v. Heliczer, 373 F.2d 241, 245

(2d Cir. 1967) (differentiating between the scope of employment and a "personal

frolic").  In the present case, Stubler stated to Agent Hudak that Hoover was

"government" and was the "middleman."  Essentially, Stubler perceived Hoover as

his contact with the federal government, and he told Hoover about the Bin Laden

sighting assuming that it would then be channeled to the appropriate authorities.

There is simply no possibility that Stubler told Hoover about the Bin Laden

incident in a personal capacity.  Thus, the retaliation was on account of Hoover's

official duties.

Stubler's final argument is that there was no specific intent to make the

threat.  The court does not find this to be the case.  Stubler walked up to Hoover's

house with the knife on his person.  He knocked and received no response.  While

the court does not care to speculate what would have happened if someone had

answered the door, when no one answered, he sunk the knife into the side of the

house.  Furthermore, the facts make it clear that he was displeased with Hoover.

The only rational conclusion is that Stubler's goal was to threaten Hoover.

**CONCLUSION:**

Because the court finds that the evidence is sufficient to sustain a conviction for violation of 18 U.S.C. § 115(a)(2), the court will deny the defendant's motion for judgment of acquittal.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      Defendant's motion for judgment of acquittal on count one of the indictment is DENIED (Rec. Doc. No. 63).

2.      Sentencing is confirmed for December 12, 2006 at 10:00 a.m.

_____s/ James F. McClure, Jr._____
James F. McClure, Jr.
United States District Judge